————————

## No. 12-2194
————————

**In the United States Court of Appeals for the First Circuit**


**MICHELLE KOSILEK,**

**Plaintiff-Appellee,**


**v.**


**LUIS S. SPENCER,**
**Commissioner of the Massachusetts Department of Correction,**

**Defendant-Appellant.**


——————————————

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, LEGAL AID SOCIETY, HARVARD PRISON LEGAL ASSISTANCE PROJECT, PRISONERS' LEGAL SERVICES OF NEW YORK, AND PRISONERS' LEGAL SERVICES OF MASSACHUSETTS IN SUPPORT OF PLAINTIFF-APPELLEE**
——————————————

Joshua Block
LGBT Project
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2593
jblock@aclu.org

Matthew R. Segal
(1st Cir. No. 1151872)
American Civil Liberties Union of
    Massachusetts
211 Congress Street
Boston, MA 02110
 (617) 482-3170
msegal@aclum.org

*Additional counsel listed on inside cover*

David C. Fathi
National Prison Project
American Civil Liberties Union
    Foundation
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@npp-aclu.org

## CORPORATE DISCLOSURE STATEMENT

None of the *amici curiae* is a nongovernmental entity with a parent

corporation or a publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICI CURIAE* ..............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................3

ARGUMENT ..................................................................................8

   I.   In Reviewing an Appeal from a Bench Trial, This Court Should Defer to the District Court's Factual Findings ...................................................8

   II.  The District Court Was Not Required To Defer to DOC or Its Witnesses When Analyzing the Objective Component of Kosilek's Eighth Amendment Claim. .......................................................................10

   III. The District Court Was Not Required to Defer to DOC's Pretextual Security Justifications When Analyzing the Subjective Component of Kosilek's Eighth Amendment Claim. .............................................................14

CONCLUSION ................................................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011) .....................................................12

*Battista v. Clarke*, 645 F.3d 449 (1st Cir. 2011)............................................. passim

*Brown v. Plata*, 131 S. Ct. 1910 (2011)........................................................... 5, 7, 8

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ...............................................15

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)................4, 16

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).......................................8, 9

*Estelle v. Gamble*, 429 U.S. 97 (1976) .....................................................................3

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...................................................... 4, 7, 18

*Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011) .......................................................15

*Gregg v. Georgia*, 428 U.S 153 (1976) ...................................................................3

*Helling v. McKinney*, 509 U.S. 25 (1993) .............................................................11

*Hudson v. McMillian*, 503 U.S. 1 (1992)......................................................... 10, 11

*Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705 (5th Cir. 1951) .............18

*Jensen v. Clarke*, 94 F.3d 1191 (8th Cir. 1996).................................................7, 18

*Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484 (1st Cir. 2011) ...............................4

*Monmouth County Corr. Inst. Inmates v. Lanzaro*,                     834 F.2d 326 (3d Cir. 1987) ....... 4, 16, 17

*Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183 (2d Cir. 2005).......14

*Palandjian v. Foster*, 842 N.E.2d 916 (Mass. 2006) ................................................13

*Palmore v. Sidoti*, 466 U.S. 429 (1984) ....................................................................16

*Primus v. Galgano,* 329 F.3d 236 (1st Cir. 2003) ................................................6, 13

*Quinn v. Nix*, 983 F.2d 115 (8th Cir. 1993) .............................................................16

*Schaub v. VonWald*, 638 F.3d 905 (8th Cir. 2011) ........................................ 5, 8, 9

*Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012) .................................. 6, 11, 14, 15

*Soneeya v. Spencer*, 851 F. Supp. 2d 228 (D. Mass. 2012) ......................... 7, 13, 19

*Torraco v. Maloney*, 923 F.2d 231 (1st Cir. 1991) ...................................................15

*United States v. DeCologero*, 821 F.2d 39 (1st Cir. 1987) .............................. 10-11

*United States v. Huebner*, 356 F.3d 807 (7th Cir. 2004) ..........................................9

*United States v. Stewart*, 536 F.3d 714 (2008) ........................................................9

*Wares v. vanBebber*, 319 F. Supp. 2d 1237 (D. Kan. 2004) ...................................16

*Watson v. Caton*, 984 F.2d 537 (1st Cir. 1993) ...................................................5, 17

*Williams v. Lane*, 851 F.2d 867 (7th Cir. 1988) ......................................................16

## Rules

Fed. R. App. P. 29(c)(5) .............................................................................................1

Fed. R. Evid. 404(b) .................................................................................................19

# INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union (ACLU) is a nationwide, non-profit, nonpartisan organization with over 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this Nation's civil rights laws. Through its LGBT Project and National Prison Project, the ACLU works to protect the rights of lesbian, gay, bisexual, and transgender individuals and the rights of prisoners. The American Civil Liberties Union of Massachusetts (ACLU of Massachusetts) is an affiliate of the ACLU dedicated to promoting civil liberties in Massachusetts. Both the ACLU and the ACLU of Massachusetts have appeared frequently before this and other federal courts, as *amici* and as direct counsel.

The Harvard Prison Legal Assistance Project (Harvard PLAP) was founded in 1972 by students at Harvard Law School. For the past forty years, Harvard PLAP has trained law students to represent individuals incarcerated in Massachusetts and to engage in efforts to promote prisoner's rights. Harvard PLAP has developed a particular expertise in the rights of prisoners in Massachusetts state prisons.

---

[1] Pursuant to Fed. R. App. P. 29(c)(5), *amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici*, their members, and their counsel contributed money towards the preparation or filing of this brief. This brief has been submitted together with a motion seeking this Court's leave to file.

The Legal Aid Society in New York City is a private not-for-profit organization that has provided free legal assistance to indigent persons in New York City for over 135 years. Through its Prisoners' Rights Project, the Society seeks to ensure that prisoners' constitutional and statutory rights are protected. The Society advocates on behalf of prisoners in the New York City jails and New York state prisons, and conducts litigation on behalf of clients to address prison conditions.

Prisoners' Legal Services of New York (PLS) is a not-for-profit organization that has provided civil legal services to indigent inmates in New York State correctional facilities for over thirty-six years. PLS responds to over 8,000 requests for assistance annually and serves as legal counsel to prisoners on a variety of claims in the state and federal courts, including claims of excessive force, deliberate indifference and violations of due process. PLS has a significant interest in ensuring that prisoners have the same opportunity to have their claims of constitutional wrongs adjudicated by state or federal courts as other individuals. PLS has participated as *amicus curiae* in a variety of cases in both state and federal courts.

Prisoners' Legal Services of Massachusetts is a not-for-profit organization that has represented prisoners in civil rights and prison conditions matters for forty years.

## INTRODUCTION AND SUMMARY OF ARGUMENT

*Amici* submit this brief to address important limits on the deference prison officials can claim when complying with their Eighth Amendment obligation to respond to prisoners' serious medical needs. As discussed below, before providing any deference to the judgment of prison administrators, the factfinder must independently determine whether the treatment of a prisoner fell below an objective standard of care and whether prison officials' justifications for that treatment have been advanced in good faith. If a district court resolves both determinations against the prison officials, then it has no occasion to provide any deference to their proffered justifications for denying treatment.

Although Gender Identity Disorder ("GID") is a relatively rare medical condition, the legal principles of this case are straightforward: "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S 153, 173 (1976)). At the bench trial, Kosilek had the burden of establishing by a preponderance of the evidence that (a) as an objective matter, she had a serious medical need for sex reassignment surgery, and (b) as a subjective matter, defendants acted with deliberate indifference when refusing to provide sex

3

reassignment surgery to her.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

*Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 497 (1st Cir. 2011).

The district court found that, in denying Kosilek sex reassignment surgery

recommended by its own physicians, DOC officials engaged in exactly the type of

"unnecessary and wanton infliction of pain" that the Eighth Amendment prohibits.

The court found that Commissioner Dennehy – the person responsible for denying

Kosilek's sex reassignment surgery from 2003 to 2007 – knew that Kosilek's GID

was causing mental anguish so severe that it put Kosilek at high risk of suicide.

The court also found that Dennehy's proffered reasons for denying the surgery

were, quite simply, "false."  Add. 31.  Dennehy's true reason for denying

treatment, according to the court, was because she thought "the idea of providing

such treatment for a transsexual who murdered [her] wife is offensive to many

members of the community, many of their elected representatives, and to the

actively interested media as well."  Add. 48.

The Constitution does not authorize prison officials to withhold medically

necessary care from a prisoner because of the prejudices, irrational fears, or moral

disapproval of governmental officials or their constituents.  *See City of Cleburne,

Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985); *Monmouth County Corr.

Inst. Inmates v. Lanzaro*, 834 F.2d 326, 336 n.16 (3d Cir. 1987).  Indeed, denying

necessary medical care because of public hostility and disapproval toward

4

prisoners is exactly the sort of "intent to punish" that the Eighth Amendment prohibits. *Battista v. Clarke*, 645 F.3d 449, 454 (1st Cir. 2011); *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993).

DOC scarcely mentions, let alone rebuts, Chief Judge Wolf's devastating factual findings regarding Commissioner Dennehy's true, improper motives. Instead, DOC argues that the district court was required to defer to the post hoc medical views and security rationales advanced by DOC's witnesses, even though the district court found that those views and rationales did not actually motivate DOC's decision. DOC Br. 44.

That argument misunderstands the proper role of the finder of fact. The district court's findings regarding the applicable standard of care and the subjective motivations of DOC officials are classic findings of fact that cannot be disturbed on appeal unless they are clearly erroneous. *See Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011); *Brown v. Plata*, 131 S. Ct. 1910, 1932 (2011). Far from having to defer to DOC witnesses as to those questions, the district court was required to make its own independent findings and the district court's findings are themselves entitled to deference on appeal.

With respect to the standard of care, the district court was obliged to decide whether Kosilek had a serious medical need for surgery. DOC asserts the district court made an erroneous "legal finding," DOC Br. 33, when it credited the

testimony of five expert witnesses – including DOC's own physicians – that

surgery was the only acceptable treatment under prudent professional standards.

DOC seems to assert that the district court was instead required to defer to the

expert witnesses DOC retained for trial, who provided a post hoc medical

justification for the decision Commissioner Dennehy had already made for non-

medical reasons.  But questions about the appropriate standard of care are classic

questions of fact for the district court to decide.  *Primus v. Galgano,* 329 F.3d 236,

244-45 (1st Cir. 2003); *Snow v. McDaniel*, 681 F.3d 978, 988-89 (9th Cir. 2012).

The district court was under no obligation to defer to the idiosyncratic views of

DOC's expert witnesses in making that determination.

        With respect to the subjective motivations of DOC officials, the district

court did not owe any deference to pretextual security concerns that were not

offered in good faith.  DOC does not challenge the district court's factual finding

that security concerns were not what actually motivated Commissioner Dennehy to

block Kosilek from receiving sex reassignment surgery.  Instead, DOC argues that

Commissioner Clarke's replacement of Commissioner Dennehy constitutes an

intervening cause that wipes the slate clean and purges Dennehy's improper

motives.  DOC Br. 41.  In making that argument, however, DOC had the burden of

showing that it was "no longer unreasonably disregarding an objectively

intolerable risk of harm and that [it] would not revert to [its] obduracy upon

6

cessation of the litigation." *Farmer*, 511 U.S. at 846 n.9. Like other cases of voluntary cessation, the burden of proof at this juncture rested with the defendant. *Jensen v. Clarke*, 94 F.3d 1191, 1201 (8th Cir. 1996).

DOC has not come close to carrying that burden. The district court found that Commissioner Clarke never independently assessed the purported security risk of providing Kosilek with surgery. Instead, the court found that Commissioner Clarke merely relied on the testimony of DOC witnesses who themselves lacked sufficient knowledge about Kosilek's history or individual circumstances. Add. 45. Commissioner Clarke's deliberate indifference is confirmed by the fact that under his administration — after he testified in this case — DOC codified an unconstitutional policy of denying sex reassignment surgery in all circumstances without regard to a prisoner's individual medical needs. Add. 56. That policy has already been held unconstitutional by another district court, which concluded that, by adopting the policy, DOC officials "have chosen to deliberately disregard [plaintiff's serious medical] need by failing to undertake a good faith evaluation of her medical care, or the security implications of the various treatment options." *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 250 (D. Mass. 2012).

"Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown*, 131 S. Ct. at 1928-29. Because the district court's factual findings are not clearly

erroneous, and because they are dispositive of this case, the district court's grant of injunctive relief should be affirmed.

## ARGUMENT

### I.     In Reviewing an Appeal from a Bench Trial, This Court Should Defer to the District Court's Factual Findings

The relevant "deference" in this appeal is the deference owed to a district court's findings of fact.  "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact.  After a bench trial, this court reviews the district court's findings of fact for clear error."  *Schaub*, 638 F.3d at 915 (internal citations omitted).  "Deference to trial court factfinding reflects an understanding that [t]he trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise."  *Brown*, 131 S. Ct. at 1929 (internal quotation marks and citations omitted).  "In practice, the 'clearly erroneous' standard requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990).[2]

---

[2] "The legal labels applied to facts are reviewed on appeal more closely than a district court fact-finding, but often with some deference to the district judge." *Battista*, 645 F.3d at 454.  *Cf. Brown*, 131 S. Ct. at 1932 (applying deferential standard and affirming decision after bench trial where ultimate conclusion "presents a mixed question of law and fact" but "the mix weighs heavily on the 'fact' side.").

8

The district court's judgment was based on factual determinations regarding the applicable professional standards of care and the motivations and credibility of DOC officials.  In reviewing those determinations on appeal, "[i]t is not this Court's place to 'duplicate the role' of the trial court." *Brown*, 131 S. Ct. at 1929. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, this court may not reverse it even [if] this court would have weighed the evidence differently if sitting as the trier of fact." *Schaub*, 638 F.3d at 915.  So long as the trial court has "a reasonable basis for [its] judgment," its decision must be affirmed.  *Battista*, 645 F.3d at 455.

Deference to district court factfinding is especially important in this case because Chief Judge Wolf's factual determinations were based in large part on his assessment of the credibility and good faith of DOC's witnesses.  "When findings are based on witness credibility, Rule 52(a) demands even greater deference to the trial court's findings." *Schaub*, 638 F.3d at 915.  "In this context, the clear-error standard is especially difficult to surmount; we will accept the district court's credibility finding 'unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.'" *United States v. Stewart*, 536 F.3d 714, 720 (2008) (quoting *United States v. Huebner*, 356 F.3d 807, 813 (7th Cir. 2004) (internal quotation marks omitted)).

9

Chief Judge Wolf's findings regarding the applicable standard of care and the subjective motivations of DOC officials are classic findings of fact that cannot be disturbed on appeal unless they are clearly erroneous. DOC argues that the district court was required to defer to the testimony of its expert witness (which the court found to be outside the bounds of prudent professional standards) and its protestations that it acted in good faith (which the court found to be not credible). But district courts are routinely called upon to weigh the testimony of expert witnesses and to assess the credibility of lay witnesses, and they are never required to defer to the authority of a particular expert or to assume the truthfulness of a particular witness. Indeed, a district court's findings of fact and determinations of credibility are *themselves* entitled to deference on appeal.

## II.     The District Court Was Not Required To Defer to DOC or Its Witnesses When Analyzing the Objective Component of Kosilek's Eighth Amendment Claim.

Under the objective component of an Eighth Amendment claim, the factfinder must determine whether the plaintiff has a "sufficiently serious" medical need for treatment to trigger the protections of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). To meet this standard, the plaintiff must show that she did not receive medical care that was "reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." *United States v. DeCologero*, 821 F.2d 39, 43

10

(1st Cir. 1987).  Professional standards of care are relevant in this context because "[t]he objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'"  *Hudson*, 503 U.S. at 8.

As with any "objective" test, the objective prong of an Eighth Amendment claim must be independently determined by the trial court without deference to the particular viewpoints of the prison's doctors or administrators.  *See Snow*, 681 F.3d at 985-86.  To be sure, this Court has observed that prison officials must sometimes "balance conflicting demands" in addressing prisoners' medical needs while at the same time ensuring prison safety and security.  *Battista*, 645 F.3d at 454.  But any deference to balancing competing interests comes into play when assessing the subjective component of the Eighth Amendment test, not the objective one.  In *Battista*, for example, DOC had already conceded that a transgender prisoner's need for hormone therapy was a serious medical need under the objective prong of the Eighth Amendment; this Court's discussion of the need to balance competing interests was relevant only to the subjective prong:  whether DOC's decision to withhold treatment was sufficiently "wanton" to amount to deliberate indifference.  *Id*.  *Accord Helling v. McKinney*, 509 U.S. 25, 36-37 (1993) (clarifying that the subjective factor is the "appropriate vehicle to consider arguments regarding the realities of prison administration").

11

It is particularly important to separate the objective and subjective components of the Eighth Amendment test in this case because DOC concedes that it did not actually rely on the medical opinion of its expert witness when it denied surgery to Kosilek. Add. 42, 54. This is, therefore, not a case where prison officials claim to have reasonably relied on a medical opinion that proved to be erroneous. *Cf. Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Instead, DOC argues that even if it subjectively acted wantonly and with deliberate indifference in withholding the sex reassignment surgery that was recommended by Kosilek's treating physicians, the injury caused to Kosilek was not objectively serious enough to rise to the level of a constitutional violation. There is no reason to defer to the post hoc justifications provided by an expert witness who did not actually influence DOC's decision.

At the bench trial the district court heard conflicting testimony with respect to whether denying surgery to Kosilek was "acceptable within prudent professional standards." Five witnesses — including the DOC doctors with responsibility for treating Kosilek and outside experts presented by the plaintiff — testified that under prudent professional standards, surgery was the only treatment capable of adequately treating Kosilek's GID. Add. 38-39. On the other side, DOC presented testimony from two of its own outside experts — Dr. Schmidt and a Licensed Social Worker, Cynthia Osborne — that surgery was not necessary. Add. 39. The

12

district court resolved this dispute by finding, as an objective matter of fact, that

the assessments of Ms. Osborne and Dr. Schmidt did not satisfy "prudent

professional standards." Add. 40.[3]

That factual judgment must be upheld unless it is clearly erroneous.  DOC

challenges the district court's factual finding about "prudent professional

standards" as an erroneous "legal finding."  DOC Br. 33.  But questions about the

professional standards of care are quintessential questions of fact that are regularly

submitted to non-expert juries and are resolved as factual disputes when there are

"two competing versions as to whether there was a violation of the standard of

care."  *Primus v. Galgano,* 329 F.3d at 244.  "[A] jury composed of non-experts

typically cannot discern generally accepted medical standards for itself.  In order to

---

[3] The district court also heard testimony from a court-appointed-expert, Dr. Levine, who initially assumed it would be impossible in the prison environment to provide Kosilek the "real world experience" of living as a woman. Add. 38.  But once the district court instructed Dr. Levine to disregard that erroneous assumption, he testified that surgery would be the only adequate treatment under prudent professional standards.  Add. 39.  DOC argues that Dr. Levine's testimony supports the views of its own experts more than the views of the other five experts who testified on behalf of Kosilek.  DOC Br. 30-34.  But, again, the value of Dr. Levine's testimony was a question of fact for the district court, and Dr. Levine's status as a court-appointed expert did not oblige the court to resolve that question in his favor.  Indeed, the district court in *Soneeya* declined to credit similar testimony presented by Dr. Levine – which was offered in that case as an expert witness for DOC – because his testimony was "contrary to the vast weight of the literature in the field, and the provisions of the Standards of Care."  *Id.* at 250. *Cf. Palandjian v. Foster*, 842 N.E.2d 916, 920-21 (Mass. 2006) ("Because the standard of care is based on the care that the average qualified physician would provide in similar circumstances, the actions that a particular physician, no matter how skilled, would have taken are not determinative.").

demonstrate an objective violation of those standards, therefore, a plaintiff ordinarily must introduce expert testimony to establish the relevant medical standards that were allegedly violated." *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190 (2d Cir. 2005). As the Ninth Circuit recently explained in a similar case where an prisoner's treating physicians repeatedly and over a long period of time recommended hip replacement surgery as medically necessary and the prison's medical review board claimed that the prisoner could adequately be treated with pain medication, "it should be for the jury to decide whether any option other than surgery was medically acceptable." *Snow*, 681 F.3d at 988.

Despite DOC's arguments to the contrary, whether DOC's denial of sex reassignment surgery for Kosilek was objectively "acceptable within prudent professional standards" was a question of fact for the trial court to resolve by the preponderance of the evidence. DOC argues that the district should have credited the idiosyncratic views of its expert witnesses, but the district court instead credited the five expert witnesses testifying on the other side. Because that finding of fact was not clearly erroneous, it must be affirmed.

## III.     The District Court Was Not Required to Defer to DOC's Pretextual Security Justifications When Analyzing the Subjective Component of Kosilek's Eighth Amendment Claim.

The subjective component of the Eighth Amendment claim focuses on the mental state of the defendant, and a district court is under no obligation to accept

14

the defendant's own account of his mental state.  "A state-of-mind issue such as the existence of deliberate indifference usually presents a jury question." *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).  Denying medically necessary care based on improper motives unquestionably satisfies the subjective test for deliberate indifference.  *See Snow*, 681 F.3d at 987-88; *Chance v. Armstrong*, 143 F.3d 698, 703-04 (2d Cir. 1998).  This Court has held that when prison officials exercise professional judgment, they enjoy some deference in providing access to medical care while taking into account legitimate concerns about safety and security.  *See Battista*, 645 F.3d at 454.  But at the same time, this Court has made clear that such balancing judgments must be "within the realm of reason and made in good faith," and decisions by prison officials to deny medical care based on safety and security concerns that a factfinder has found to be pretextual or raised in bad faith are not entitled to deference.  *Id.  Accord Fields v. Smith*, 653 F.3d 550, 558 (7th Cir. 2011) ("[D]eference does not extend to 'actions taken in bad faith and for no legitimate purpose.'").  Before deferring to the judgment of prison officials, therefore, the factfinder must decide whether those officials have, in fact, exercised the good-faith professional judgment they have proffered to the court.[4]

---

[4] *Cf. Williams v. Lane*, 851 F.2d 867, 872–73 (7th Cir. 1988) (court need not defer to prison officials' views if they are found not credible by factfinder); *Quinn v. Nix*, 983 F.2d 115, 118 (8th Cir. 1993) (restrictions on prisoners' haircuts were not justified by any legitimate penological interest in curtailing gang activity because that was not the actual motivation for the restrictions); *Wares v. vanBebber*, 319 F.

The district court found, based on overwhelming evidence, that
Commissioner Dennehy's proferred state-of-mind testimony was simply "false."
Add. 31.  According to the court, Dennehy's true motive for denying surgery was
"that the idea of providing such treatment for a transsexual who murdered [her]
wife is offensive to many members of the community, many of their elected
representatives, and to the actively interested media as well."  Add. 48.  The moral
judgments of government officials or their constituents are not legitimate bases for
denying medically necessary treatment.  It is a bedrock principle of constitutional
law that "'[p]rivate biases may be outside the reach of the law, but the law cannot,
directly or indirectly, give them effect.'"  *City of Cleburne*, 473 U.S. at 448
(quoting *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984)).

The Third Circuit made this principle clear in the Eighth Amendment
context in *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834
F.2d 326 (3d Cir. 1987), when it rejected prison officials' arguments that they
should not have to pay for medically necessary abortions because of the moral
objections of taxpayers.  The Court noted that, in the course of their duties, "prison
officials will invariably expend state funds for purposes that are morally
objectionable to some citizens."  *Id.* at 336 n.16.  For example, the court noted that

---

Supp. 2d 1237, 1248-50 (D. Kan. 2004) (holding "defendants are not entitled to the
deference afforded to them under the Turner framework if their conduct was not
actually motivated by legitimate penological interests at the time they acted";
citing other cases rejecting pretextual justifications).

some citizens might find it offensive "merely to provide three meals a day to convicted offenders." *Id.*  But those "moral objections," the court explained, "ha[ve] never alone operated to relieve prison officials of affirmative obligations to prisoners in their custody where such obligations exist." *Id.*

Similarly, prison officials cannot deny medically necessary care because the public despises the prisoner for committing a reprehensible crime.  Indeed, withholding medical care based on public hostility toward a prisoner's crime would be exactly the sort of "intent to punish" that the Eight Amendment prohibits. *Battista*, 645 F.3d at 453-454. *See also Watson*, 984 F.2d at 540 (noting that "denial of needed medical treatment in order to punish the inmate" would be an "obvious case" of an Eighth Amendment violation).

DOC attempts to overcome Dennehy's bad faith by arguing that the appointment of her replacement, Commissioner Harold Clarke, essentially wiped the slate clean.  DOC Br. 41.  To be sure "even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation." *Farmer*, 511 U.S. at 846 n.9.  But in order to make that showing, DOC has the burden of demonstrating that it cured the constitutional violations that took place under

17

Commissioner Dennehy's watch and that it is now responding to Kosilek's serious medical needs in good faith and with independent professional judgment. *See Jensen*, 94 F.3d at 1201 (holding that district court correctly placed burden of proof on defendant to show that injunction is no longer necessary under *Farmer*); *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 715 (5th Cir. 1951) ("A fact, once shown to exist, is presumed to continue until the contrary is proven.").

DOC has not come close to satisfying its burden of showing that it has ceased violating Kosilek's Eighth Amendment rights. The district court found that Commissioner Clarke did not himself undertake "a good faith effort to determine whether security considerations required denying Kosilek sex reassignment surgery," DOC Br. 44, and that finding was not clearly erroneous. Indeed – as DOC appears to concede – Commissioner Clarke's own refusal to authorize sex reassignment surgery merely relied on the prior testimony of DOC witnesses, who themselves lacked sufficient knowledge about Kosilek's history or individual circumstances. Add. 45; DOC Br. 43-44.

Commissioner Clarke's deliberate indifference is confirmed by the fact that under his administration, DOC codified an unconstitutional policy of denying sex reassignment surgery in all circumstances, without regard to the individual medical needs of a prisoner. Add. 56. As another district court has already concluded, that policy "deliberately disregard[s] [prisoners' serious medical] need[s] by failing to

18

undertake a good faith evaluation of [their] medical care, or the security implications of the various treatment options." *Soneeya*, 851 F. Supp. 2d at 250. This consistent pattern of obstruction in providing medically necessary treatment to prisoners with GID may legitimately be taken into account when determining whether an injunction is necessary. *Cf.* Fed. R. Evid. 404(b).

Indeed, this Court in *Battista* has already affirmed a district court's conclusion that Commissioner Clarke acted with deliberate indifference in withholding hormone therapy from another transgender prisoner. As in this case, Commissioner Clarke argued in *Battista* that providing medically necessary treatment would pose insurmountable security concerns, but this Court concluded that the district court was justified in concluding after "a pattern of delays, new objections substituted for old ones, misinformation and other negatives that he . . . could not trust the defendants in this instance." *Battista*, 645 F.3d at 455. In particular, this Court affirmed the district court's conclusion that Commissioner Clarke would not engage in a good faith attempt to balance the prisoner's medical needs with security concerns until an injunction was issued:

> [F]or some time, the defendants portrayed the choice facing the court as one between keeping Battista in a severely constraining protective custody unit and denying her hormone therapy. Defendants now show some signs of retreating from this all or nothing choice, but not far: this is consistent with a pattern of slow retreats to the next redoubt. The district court may well be right that a detailed solution will be developed only when the choice is forced on defendants.

*Id.* (footnote omitted).  The district court did not clearly err when it reach the same conclusion in this case.

Here, rather than acknowledge the district court's independent obligation to assess Clarke's credibility, DOC questions *the court's* credibility.  According to DOC, the district court "*sought* to discredit Commissioner Clarke" and criticized him "*disingenuous*[*ly*]."  DOC Br. 43-44 (emphases added).  DOC reasons that, because the district court ordered Clarke only to review previous trial testimony, it is unfair for that court to note Clarke's failure to proactively assess Kosilek's condition and security risk.  DOC Br. 42-43.  But DOC, not the district court, is the entity claiming that Clarke made some informed, independent judgment.  If Commissioner Clarke never made that judgment, and instead did the bare minimum required by a court order, then DOC can hardly rely on his presence to sanitize the improper motives of his predecessor.  DOC's argument to this Court – *i.e.*, that the testimony of its witnesses must be accepted, while the district court's motives should be questioned – turns the standard of review on its head.

In short, DOC cannot overcome the district court's findings that it "forfeited the advantage of deference" by denying treatment based on improper motives instead of good-faith professional judgment.  *Battista*, 645 F.3d at 455.  Those factual findings, which are amply supported by the record, are dispositive of this case.

**CONCLUSION**

Because the district court's factual conclusions were not clearly erroneous and those conclusions are dispositive of this case, the district court's grant of injunctive relief should be affirmed.

Respectfully submitted,

/s/ Matthew R. Segal

Joshua Block                                    Matthew R. Segal
LGBT Project                                    (1st Cir. No. 1151872)
American Civil Liberties Union        American Civil Liberties Union of
    Foundation                                    Massachusetts
125 Broad Street, 18th Floor            211 Congress Street
New York, NY 10004                       Boston, MA 02110
212-549-2593                                    (617) 482-3170
jblock@aclu.org                               msegal@aclum.org

David C. Fathi
National Prison Project
American Civil Liberties Union
    Foundation
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@npp-aclu.org

Dated:  March 1, 2013

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,926 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman.

<u>/s/ Matthew R. Segal</u>
MATTHEW R. SEGAL

American Civil Liberties Union
    of Massachusetts
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
*Attorney for Amici*

## CERTIFICATE OF SERVICE

I certify that on March 1, 2013, I electronically filed the foregoing Brief for *Amici Curiae* with the Clerk of Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users (either as entities or through individual attorneys representing those offices), and that service will be accomplished by the appellate CM/ECF system.

/s/ Matthew R. Segal
MATTHEW R. SEGAL

American Civil Liberties Union
    of Massachusetts
211 Congress Street
Boston, MA 02110
(617) 482-3170
msegal@aclum.org
*Attorney for Amici*